UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBYN ELIZABETH PARLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 08-cv-186-P-S |
| | ) |
| CUMBERLAND COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is the Motion for Partial Summary Judgment (Docket # 43) by Defendants Cumberland County, Mark Dion, Mary Sorrells, Carl Hitchcock, and David Dunnemann. As explained herein, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Partial Summary Judgment (Docket # 43).

**I.    SUMMARY JUDGMENT STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in

its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trial-worthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trial-worthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

With this standard in mind, the Court proceeds to lay out the factual narrative presented via the parties' statements of material fact.

## II. FACTUAL BACKGROUND

The claims in this case all stem from the Plaintiff's incarceration in the Cumberland County Jail ("Jail"). Plaintiff self-reported to the Jail on May 1, 2006 to serve a seven-day sentence. At the time of her incarceration, Plaintiff was on several prescription medications for mental health issues. She took medication as prescribed, except for a double dose of one medication, before she reported to the Jail.

Plaintiff went through the booking procedure at the Jail and was placed in a cell near the booking desk with a number of other inmates. Eventually, all of the other inmates were moved to different cells and Plaintiff was left alone in Cell F222. After a few hours in Cell F222, Plaintiff began crying and incessantly questioning the guards about why she was being isolated. Plaintiff also demanded to call her lawyer. Plaintiff was then moved to Cell F229 — also known as the "detox cell" — to quell her outbursts. The detox cell is a simple cement slab with

a metal grate in the floor and no bunk or toilet. During the move from Cell F222 to the detox cell, none of the guards physically touched her.

Approximately an hour later, a guard approached the detox cell and asked Plaintiff if she could be quiet. When she responded in the affirmative, she was moved back to Cell F222. After being left alone again in Cell F222 for a number of hours, Plaintiff resumed crying, loudly asking why she was being isolated, and demanding her medication. Plaintiff was also intermittently kicking and banging on the door of the cell.

Around 7:15 p.m., Defendants Dunnemann, Hitchcock, and Sorrells entered Cell F222 to escort Plaintiff back to the detox cell. When they entered the cell, Plaintiff was sitting on her bunk. She informed the officers that she was not violent and also told them that her shoulder had recently been surgically repaired. Sorrells took a hold of Plaintiff's left arm and pulled her up off the bunk. Sorrells then took control of Plaintiff's right arm and Dunnemann grabbed Plaintiff's left arm. Dunnemann put Plaintiff's left arm into an "arm bar" or "wrist lock." Despite Plaintiff having informed the guards of her shoulder surgery, Dunnemann pulled her arm up behind her back so that she had to walk on her toes.[1]

At some point, Sorrells lost her grip on Plaintiff's right arm and scratched Plaintiff in the process. Sorrells then had a hold of the fabric of Plaintiff's jumpsuit. In the hallway between Cell F222 and the detox cell, Hitchcock grabbed Plaintiff's leg causing Plaintiff and Sorrells to fall to the ground. Because her arms were behind her back, Plaintiff's chin went straight into the ground when she fell. Sorrells fell on top of Plaintiff. Plaintiff immediately felt pain in her shoulder and cried, "My shoulder!" Plaintiff was then struck on the back of the head by one of

---

[1] This fact is disputed by the parties. However, because Defendant Dunnemann has not moved for summary judgment on Plaintiff's excessive force claim, this dispute is not material to the Court's summary judgment analysis.

3

the male guards and her face hit the floor.[2] Sorrells remained on the ground while Dunnemann and Hitchcock grabbed Plaintiff and dragged her into the detox cell, causing her face to strike the cell door jamb and the floor.[3] Plaintiff suffered two black eyes and a torn left rotator cuff as a result of this incident.

Once in the detox cell, Plaintiff did not speak with Dunnemann, Hitchcock or Sorrells but she continued to cry and bang on the door. The shift ended for Sorrells, Dunnemann, and Hitchcock at 11:00 p.m. Plaintiff eventually calmed down and was escorted back to Cell F222 without incident by an officer who is not named as a defendant in this action. During the move, she informed that officer that she believed her shoulder had been injured. She received no medical care and was left in Cell F222 overnight.

Around 6:30 a.m. on May 2, 2006, a medical practitioner at the Jail met with Plaintiff. Plaintiff complained of shoulder pain and it was noted in her file that she had two black eyes. Plaintiff was placed on suicide watch and was taken to a cell in the Jail's medical department that had twenty-four-hour nursing coverage. Plaintiff remained on suicide watch in the medical department until May 4, 2006.

On May 5, 2006, Plaintiff completed a health services request form complaining of shoulder pain. She was given ibuprofen in response to this request. On May 6, 2006, Plaintiff was released from the Jail. Upon release, she went to the hospital for her shoulder. An MRI was ordered which revealed a complete rotator cuff tear requiring surgery.

Cumberland County and Sheriff Dion, in his official capacity, are insured through the Maine County Commissioners Association Self-Funded Risk Pool, a public self-funded pool

---

[2] Defendants admit these facts for the purposes of summary judgment only, acknowledging that the facts must be viewed in the light most favorable to the non-moving party. (Def.'s Reply Statement of Material Facts ¶ 37.)

[3] Again, Defendants admit that Plaintiff's face struck the door jamb and the floor only for purposes of summary judgment. (Id. ¶ 38.)

4

established pursuant to 30-A M.R.S.A. § 117 (the "Risk Pool"). The coverage provided by the Risk Pool explicitly excludes coverage for any cause of action seeking tort damages for which the County is immune under the Maine Tort Claims Act, 14 M.R.S.A. § 1801 et seq. Neither of these Defendants has procured any other liability insurance.

## III. DISCUSSION

Defendants Dunnemann, Hitchcock, and Sorrells (the "Individual Defendants") collectively move for summary judgment as to Plaintiff's claim that she was denied adequate medical treatment. Defendant Sorrells additionally moves for summary judgment as to Plaintiff's excessive force claim. Defendants Cumberland County and Sheriff Dion move for summary judgment as to all claims against them. Each will be addressed in turn below.

### A. Plaintiff's Claims Under 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682[4] Against the Individual Defendants (Counts I and II)

The Eighth Amendment prohibits "cruel and unusual punishments," and it is well-established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)).[5] "Prison officials have a duty to 'provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" Giroux v. Somerset County, 178 F.3d 28, 31 (1st Cir. 1999) (quoting Farmer, 511 U.S. at 832).

---

[4] Plaintiff's claims under 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682 are coextensive and will be analyzed together. See Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008).
[5] The Eighth Amendment applies to state action through the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660 (1962).

5

### i. Failure to provide adequate medical treatment

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court established that an Eighth Amendment claim of "cruel and unusual punishment" based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105-06; see also Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

There is an objective and subjective component to the deliberate indifference inquiry. A plaintiff must establish: (1) that she suffered from an objectively serious medical need; and (2) that a prison official was subjectively aware of, yet failed to attend to, this objectively serious medical need. See Farmer, 511 U.S. at 834. "Deliberate indifference" is a state-of-mind requirement that goes beyond negligence. See Estelle, 429 U.S. at 106. It is insufficient to prove only that a prison official should have known of an excessive risk to an inmate's health because a reasonable person would have: "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Where a prisoner objects, not to the lack of medical care, but to the course of treatment, courts are reluctant to find a constitutional violation. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). A treatment regime can amount to deliberate indifference only where it effectively results in a complete denial of basic care. Id.; see also Munoz, 770 F.2d at 259.

6

### a. Plaintiff's physical injuries

Plaintiff contends that her constitutional rights were violated when the Individual Defendants ignored her pleas for medical attention after she sustained physical injuries during her move from Cell F222 to the detox cell. Assuming that Plaintiff has established that she was suffering from an objectively serious medical need, thereby satisfying the first prong of the inquiry, her claim fails because she has not established a factual dispute as to whether the Individual Defendants were subjectively aware of her serious medical condition.

Other than crying out "my shoulder" after she had fallen, Plaintiff made no mention of her shoulder injury to any of the Individual Defendants.[6] Once she was inside the detox cell, Plaintiff had no communication with the Individual Defendants. None of the Individual Defendants observed the swelling and bruising on her face prior to the end of their shift at 11:00 p.m. Plaintiff has therefore failed to carry her burden with respect to whether the Individual Defendants were subjectively aware of her physical injuries.

### b. Plaintiff's mental health needs

Plaintiff also alleges that the Individual Defendants were deliberately indifferent to her preexisting mental health needs because she did not receive her prescribed medication in a timely manner. A failure to give prescribed medication, in and of itself, does not constitute deliberate indifference. Rather, a plaintiff must show that she suffered "serious symptoms" as a result of being denied the medication and that the jail officials were subjectively aware of the symptoms that would result from the denial of the medication. Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995). Plaintiff has failed to show that the Individual Defendants were

---

[6] Plaintiff did inform the Individual Defendants that surgery had recently been performed on her shoulder. This does not establish, however, that the Individual Defendants knew that her shoulder had been reinjured during the fall.

7

subjectively aware of any serious side effects that might result from the failure to administer Plaintiff's medication.[7]

Moreover, where the dispute is not over whether an inmate received any medical treatment but regards the adequacy of medical treatment, courts are reluctant to find a constitutional violation. Plaintiff was screened upon being admitted to the Jail and this screening included questions related to her mental health history and current mental health condition. Plaintiff was given her prescribed medication three days after she reported to Jail. Plaintiff was repeatedly seen by the Jail's medical contractors and was, at one time, under twenty-four-hour nursing supervision. Considering all of the above, Plaintiff has failed to show a genuine factual dispute as to whether the Individual Defendants were deliberately indifferent to her mental health needs.

As to Defendant Hitchcock, Plaintiff asserts an additional argument. Defendant Hitchcock alleges that he witnessed Plaintiff punching herself in the face with closed fists and banging her head against the wall. He alleges that he witnessed these acts just before he made the decision to move Plaintiff to the detox cell for the second time. Plaintiff denies that she engaged in any self-harm, but argues that, were the jury to believe Hitchcock's account of the events, his failure to provide mental health treatment after having observed these behaviors constituted deliberate indifference to her serious medical needs.

Plaintiff's claim fails in this regard, however, because she has not shown that Hitchcock was indifferent. Hitchcock claims that his observation of her engaging in self-harm was a factor

---

[7] It is worth noting that the Jail contracted with Correctional Medical Services to provide medical services for its inmates. Plaintiff has not named Correctional Medical Services or any of its employees as defendants in this action. Employees of Correctional Medical Services, not the Jail employees, typically administer medication to the inmates. Accordingly, it is difficult for the Court to see how the Individual Defendants would be liable for the failure to administer prescription medication absent some evidence showing that they denied Plaintiff access to Correctional Medical Services and/or its employees. There is no such evidence in this case.

in his decision to move her because the detox cell: (1) provided less opportunity for Plaintiff to harm herself because it lacked a toilet and cot; and (2) is subject to more stringent monitoring. Plaintiff may object to Hitchcock's decision to move her to the detox cell rather than notify the Jail's medical personnel but his decision does not constitute deliberate indifference. See Torraco, 923 F.2d at 234. Moreover, the next morning, Plaintiff was seen by the Jail's medical contractors and was placed on suicide watch where she had twenty-four-hour access to medical care. Because Hitchcock did not deny Plaintiff mental health treatment after he allegedly observed her engaging in self-harm, the deliberate indifference standard has not been satisfied. See id. (a prisoner must be effectively denied medical treatment to state a constitutional violation).

For the reasons outlined above, the Court concludes that Plaintiff has failed to establish a genuine dispute of material fact as to whether the Individual Defendants were deliberately indifferent to her serious medical needs. Accordingly, the Individual Defendants' Motion for Partial Summary Judgment is GRANTED with respect to Plaintiff's § 1983 deliberate indifference claims.

### ii. Excessive force

Plaintiff claims that the Individual Defendants violated her constitutional rights by utilizing excessive force the second time she was moved from Cell F222 to the detox cell. Defendant Sorrells moves for summary judgment arguing that the force she employed was not constitutionally excessive.[8]

To state a claim for the use of excessive force by a prison official under the Eighth Amendment, an inmate must demonstrate "unnecessary and wanton infliction of pain." Whitley

---

[8] Defendants Dunnemann and Hitchcock have not moved for summary judgment on Plaintiff's excessive force claims against them and those claims will proceed to trial.

9

v. Abers, 475 U.S. 312, 319-20 (1986).  The main inquiry in determining whether prison officials used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley, 475 U.S. at 320-21).  "Not every push or shove, even if it may later seem unnecessary . . . violates a prisoner's constitutional rights."  Id. (internal citations omitted).  The Eighth Amendment excludes from constitutional recognition de minimis uses of physical force, provided that the force is "'not repugnant to the conscience of mankind." Whitley, 475 U.S. at 327 (quoting Estelle, 429 U.S. at 106)).  Thus, to state a cognizable § 1983 claim for excessive force by prison officials, a plaintiff must allege wrongdoing amounting to more than a de minimis use of force.

Plaintiff has failed to establish a genuine factual dispute over whether Sorrells used excessive force.  Viewing the facts in the light most favorable to Plaintiff, the contact between Plaintiff and Sorrells was minimal and the force used by Sorrells falls far short of being "repugnant to the conscience of mankind."  Upon entering cell F222, Sorrells grabbed Plaintiff's left wrist and pulled her off the bed.  Once Plaintiff was firmly in the grip of another guard, Sorrells let go of the Plaintiff and scratched her arm in the process.  While Plaintiff was in the hallway between cells, Sorrells had a hold of the fabric of Plaintiff's jumpsuit.  When Hitchcock grabbed Plaintiff's foot causing her to fall, Sorrells fell on top of Plaintiff.  After falling, Sorrells remained on the ground and was not involved in moving Plaintiff the rest of the way into the detox cell.

The only force arguably more than de minimis that involved Sorrells occurred when Sorrells fell on top of Plaintiff.  Plaintiff does not allege and there is no evidence showing that Sorrells intentionally fell on Plaintiff.  Having viewed the evidence in the light most favorable to

Plaintiff, the Court finds that there is no trial-worthy issue as to whether Defendant Sorrells personally used excessive force against Plaintiff.

Plaintiff also argues that there is a trial-worthy question as to whether Sorrells could be held liable for the excessive force used by Dunnemann and Hitchcock under a failure to intervene theory. But "[a] police officer cannot be held liable for failing to intercede if he has no realistic opportunity to prevent an attack." Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (internal quotation omitted). It is undisputed that the incident at issue here lasted only a matter of seconds. Thus, Plaintiff has failed to establish that Sorrells had a reasonable opportunity to intervene and prevent the other Defendants' use of force in this case.

Because Plaintiff has failed to establish a trial-worthy issue as to whether Defendant Sorrells used excessive force against her, Defendant Sorrells's Partial Motion for Summary Judgment is GRANTED in this regard. Plaintiff's claim for excessive force is DISMISSED WITH PREJUDICE as to Defendant Sorrells but remains pending as to Defendants Dunnemann and Hitchcock.

### B. Plaintiff's Claims Pursuant to 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682 Against Sheriff Mark Dion and Cumberland County (Counts III and IV)

Defendants Cumberland County and Sheriff Mark Dion, in his official capacity,[9] move for summary judgment on all claims against them.[10] Plaintiff argues that summary judgment is inappropriate because there is a factual dispute as to whether Plaintiff's injuries were caused by

---

[9] Plaintiff's claims against Sheriff Dion in his official capacity are duplicative of the claims against Cumberland County. See Suprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) ("A suit against a public official in his official capacity is a suit against the governmental entity itself."). The Court's reference to "the County" therefore encompasses Plaintiff's claims against both the County and Sheriff Dion.

[10] Count VI of Plaintiff's Complaint sets forth a claim for "Spoliation of Evidence" against the County and Dion. Because spoliation of evidence is not an independent cause of action in Maine, see Gagne v. D.E. Jonsen, Inc., 298 F. Supp. 2d 145 (D. Me. 2003), Count VI of Plaintiff's Complaint fails to state a claim upon which relief could be granted and is DISMISSED WITH PREJUDICE.

11

the County's policies or customs. Plaintiff also alleges that the County failed to adequately train its officers and failed to adequately investigate her grievance.

### i. Unconstitutional Custom or Policy

Plaintiff alleges that the County, acting according to an established custom, intentionally violated her Eighth Amendment rights. The Supreme Court first pronounced that there was no respondeat superior liability under 42 U.S.C. § 1983 for municipalities or other local governmental bodies in Monell v. New York City Department of Social Services, 436 U.S. 658, 689 (1978). Thus, in order to succeed on a § 1983 claim against the County, Plaintiff generally must identify a custom or policy that caused her injury. To be attributable to a municipality, a custom "must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989). The custom must also be the "moving force behind the deprivation of constitutional rights." Id.

Plaintiff does not allege that the County had an unconstitutional policy or custom that relates to her excessive force claim. Plaintiff also admits that the County's official policies with respect to providing medical treatment to inmates are not unconstitutional. Instead, she asserts that the Jail's employees' "common practice" is not to follow these official policies and, therefore, the County should be held liable for the deprivation of medical care. As discussed above, however, Plaintiff has not shown that the health care provided to her was constitutionally insufficient. Thus, there could be no causal connection between any deficient County custom relating to medical care provided to inmates and the alleged deprivation of rights. See Burns v. Loranger, 907 F.2d 233, 239 (1st Cir. 1990) (where plaintiff had failed to show a constitutional

12

deprivation, "there could have been no causal connection between a city policy . . . and the alleged deprivation").

Additionally, the evidence relied upon by Plaintiff to show the alleged unconstitutional custom relates only to how she was treated while incarcerated at the Jail. Plaintiff has presented no evidence showing that other inmates were denied appropriate medical treatment by Jail officials. A "'single incident' of misconduct," without more, "cannot provide the basis for municipal liability under § 1983" because such a result would be tantamount to "imposing respondeat superior liability upon the municipality." Bordanaro, 871 F.2d at 1161 n.8; see also Pineda v. City of Houston, 291 F.3d 325, 329 (5th Cir. 2002) (noting that "one act is not itself a custom"); Mulkern v. Cumberland County, No. 00-382-P-C, 2001 WL 1519409, at *21 (D. Me. Nov. 30, 2001) (evidence showing that two inmates had not received prescribed medication, that record-keeping was spotty, and that a consultant had concluded that the jail's record-keeping was not as good as it should have been was insufficient to establish a policy or custom). Accordingly, Plaintiff has failed to establish a trial-worthy issue as to whether the County had an unconstitutional policy or custom that was the motivating force behind a violation of her civil rights.

### ii.     Failure to Train

Plaintiff also argues that the County should be liable for her injuries because it failed to adequately train its officers. "The liability criteria for 'failure to train' claims are exceptionally stringent." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998). "Only if the failure to train 'amounts to <u>deliberate</u> <u>indifference</u> to the rights of persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury, can the claim against the municipality prevail." Id. (quoting Canton, 489 U.S. at 388-89) (emphasis

in original).  To prove a failure to train claim, a plaintiff must show that the municipality had "a policy of not taking reasonable steps to train . . . employees" such that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably said to have been deliberately indifferent to the need."  Bordanaro, 871 F.2d at 1159.

Plaintiff asserts that the County is liable for failing to provide basic mental health training and for failing to ensure that Jail employees were following its medical policies.  Again, Plaintiff supports this argument with evidence showing only how she was treated while in custody.  As such, Plaintiff's evidence falls short of establishing that the County was deliberately indifferent to any inadequacy in its training practices.  See Buchanan ex rel. Estate of Buchanan v. Maine, 417 F. Supp. 2d 45, 66 (D. Me. 2006) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell."); see also City of Canton v. Harris, 489 U.S. 378, 399 (1989) ("Allowing an inadequate training claim such as this one to go to the jury based upon a single incident would only invite jury nullification of Monell.").

Plaintiff argues that the County should be held liable because Jail officials failed to adequately investigate her grievance.  Again, Plaintiff's only evidence on this issue is that Jail officials did not thoroughly investigate her claim, which does not establish a constitutional violation.  See Landrigan v. City of Warwick, 628 F.2d 736, 747 (1st Cir. 1980) ("We do not believe that a municipality's failure to investigate this isolated charge of [misconduct] would be sufficient, by itself, to establish its liability").

Accordingly, Plaintiff has failed to establish a trial-worthy issue as to whether Cumberland County and Sheriff Dion are liable for violating her constitutional rights.

Defendants Cumberland County and Dion are entitled to summary judgment on Counts III and IV and these claims are DISMISSED WITH PREJUDICE.

### C. Plaintiff's Tort Claims (Counts VII-X)

Plaintiff states a claim for negligence against the County and Dion.[11] Plaintiff also states claims for battery and intentional infliction of emotional distress against each of the Individual Defendants.[12] All Defendants move for summary judgment based on immunity pursuant to the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. § 8101 et seq.[13]

As to the County and Sheriff Dion in his official capacity, Plaintiff's negligence claim is barred by the MTCA because the County's insurance policy explicitly limits coverage to only those areas for which governmental immunity has been expressly waived by statute. See 14 M.R.S.A. § 8103 ("all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages."); Estate of Hampton v. Androscoggin County, 245 F. Supp. 2d 150, 160-61 (D. Me. 2003) (examining same policy language and finding that immunity from suit had not been waived). As all claims against Cumberland County and Dion in his official capacity have now been dismissed, Cumberland County and Dion are DISMISSED WITH PREJUDICE as party defendants to this action.

---

[11] Plaintiff's negligence claim was originally brought against the Individual Defendants as well. However, in Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment, Plaintiff abandoned her negligence claim against the Individual Defendants. Accordingly, Plaintiff's negligence claim (Count VII) against Defendants Hitchcock, Sorrells, and Dunnemann is DISMISSED WITH PREJUDICE.

[12] Plaintiff originally brought a claim for negligent infliction of emotional distress against the Individual Defendants but abandoned that claim in her Opposition to Defendant's Motion for Partial Summary Judgment. Accordingly, Plaintiff's negligent infliction of emotional distress claim (Count X) is DISMISSED WITH PREJUDICE.

[13] Count Five of Plaintiff's Complaint purports to set forth a claim for "Violations of the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101 et seq." However, "the Maine Tort Claims Act does not provide plaintiffs seeking to sue governmental entities or their employees with a substantive cause of action. Rather 'the Maine Tort Claims Act is the statutory reformulation of the doctrine of sovereign immunity.'" Ellis v. Meade, 887 F. Supp. 324, 330 n.7 (D. Me. 1995) (quoting Rutherford v. City of Portland, 494 A.2d 673, 675 (Me. 1985)). Accordingly, Count V of Plaintiff's Complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief could be granted.

The Individual Defendants assert that Plaintiff's tort claims are barred by the discretionary function immunity of the MTCA. See 14 M.R.S.A. § 8111(1)(C); Ellis v. Meade, 887 F. Supp. 324, 330-31 (D. Me. 1995); Roberts v. State, 731 A.2d 855, 857-58 (Me. 1999). Plaintiff contends that the Individual Defendants exceeded their discretion, thereby losing their immunity.

The MTCA provides absolute immunity for state employees "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." 14 M.R.S.A. § 8111(1)(C). "In determining whether an officer is carrying out a discretionary function, Maine courts focus on whether the defendant is required to use his judgment while acting in furtherance of a departmental policy [or] legislatively imposed duty." Ellis, 887 F. Supp. at 331 (quoting McLain v. Milligan, 847 F. Supp. 970, 977 (D. Me. 1994)). If an officer exceeds the scope of his discretion, however, he may lose the immunity. Richards v. Town of Eliot, 780 A.2d 281, 292 (Me. 2001) ("If the officer uses excessive force in executing an arrest, such action is beyond the scope of the officer's discretion.").

The Court is satisfied that the decision to transfer Plaintiff to a different cell and reasonable actions taken to effectuate transfer involved discretionary functions. See Erskine v. Comm'r of Corr., 682 A.2d 681, 686 (Me. 1996) ("The management and care of prisoners is a discretionary function."); see also Ellis, 887 F. Supp. at 331 ("The Court is satisfied that the management and care of prisoners is more than a ministerial function. It requires use of the officer's judgment."). The issue, therefore, is whether the Individual Defendants' actions in effectuating Plaintiff's transfer were "so egregious that [they] exceeded as a matter of law, the scope of any discretion [they] could have possessed." Ellis, 887 F. Supp. at 331 (quoting Bowen, 606 A.2d at 1055).

16

The Maine Law Court has held that when an officer uses excessive force in effectuating an arrest, the police officer has exceeded his discretion. Richards v. Town of Eliot, 780 A.2d 281, 292 (Me. 2002). In reliance on Richards, this Court has held that when there is a genuine issue of fact as to whether a defendant was deliberately indifferent to a prisoner's medical needs under the Eighth Amendment then "he or she is not entitled to summary judgment on a Maine Tort Claims Act claim by dint of an absolute immunity defense that he was acting within the scope of his or her discretion." Martin v. Somerset County, 387 F. Supp. 2d 65, 83 (D. Me. 2005). In this case, because Plaintiff's excessive force claims against Defendants Dunnemann and Hitchcock are proceeding to trial, Dunnemann and Hitchcock are not entitled to summary judgment on Plaintiff's tort claims based on discretionary function immunity.[14] As to Defendant Sorrells, however, because the Court has already concluded that there is no factual dispute as to whether she used excessive force, there is also no factual dispute as to whether she abused her discretion. Accordingly, Defendant Sorrells is entitled to summary judgment on Plaintiff's tort claims but Defendants Dunnemann and Hitchcock are not and these claims remain pending in this action.

## IV.     CONCLUSION

For the reasons explained herein, the Court ORDERS that Defendants' Motion for Partial Summary Judgment (Docket # 43) is hereby GRANTED IN PART and DENIED IN PART. In accordance with these rulings, Counts III, IV, V, VI, VII, and X are dismissed with prejudice. Counts I and II are dismissed with prejudice as to Defendant Mary Sorrells but remain pending as to Defendants Dunnemann and Hitchcock to the extent that they allege unconstitutional

---

[14] The Court has not considered whether summary judgment would have been appropriate on the merits of Plaintiff's intentional infliction of emotional distress and battery claims because the sole basis for summary judgment put forth by Defendants in the instant motion is the discretionary function immunity. The Court expresses no opinion as to whether Plaintiff has established a trial-worthy issue of disputed fact on her remaining tort claims.

excessive force.  Counts VIII and IX are dismissed with prejudice as to Defendant Mary Sorrells but remain pending as to Defendants Dunnemann and Hitchcock.  Defendants Cumberland County, Mark Dion, and Mary Sorrells are dismissed with prejudice as party-defendants to this matter.

     SO ORDERED.

                                        /s/ George Z. Singal
                                         United States District Judge

Dated this 11th day of September, 2009.